Good morning. May it please the Court, Patricia Marr appearing on behalf of Appellant Oxbow. Would you keep your voice up? Certainly. Patricia Marr appearing on behalf of Appellant Oxbow Holdings, LLC. With me today in the audience is the managing member of that LLC, Eric Cernich. I would like to respectfully reserve five minutes for rebuttal, please. Sure. Okay. The clock is ticking down. It's right there in front of you. This matter is fairly simple and reflected and argued in the briefs, so I will be brief. Essentially what it boils down to is that the trial court's findings of fact and conclusions of law are not supported by the evidence. And the review, standard of review, is de novo for the court's review of the contract and clearly erroneous with respect to a specific finding of fact. And that finding of fact is 22 in the judgment that was ordered, paragraph 22, that the trustee performed of its obligations and disclosures under the contract, which he did not. Specifically, the vacant land purchase agreement was purchased, was signed on June 23, 2015. Prior to that and by the appellee's own admission, there was a motion to lift stay that was filed sometime in November of 2014. When my client, who we concede is a sophisticated developer, executed the purchase agreement on June 23, 2015, he had no knowledge whatsoever that the motion to lift stay had been filed and consequently the property at issue was subject to foreclosure based upon unpaid taxes. He had no knowledge that there were unpaid taxes? Wasn't that in the brochure? No. Well, he may have had knowledge, and that evidence isn't in the record. That was argued by the appellee. What's significant and the distinction between that is the fact that there was, while there may be unpaid taxes, there was no knowledge of a legal proceeding. So the train's coming down the tracks, and he has no knowledge of that. What was, what was, what do you characterize as the legal proceeding? A legal proceeding would be certainly a motion to lift stay because it adversely affects. What does the text of the, of the contract say? Oh, the text of the contract specifically states, I'm glad you asked that, seller documentation and addition. This is, I'm referring to section 13 of the vacant land purchase agreement. Seller documentation and additional disclosure, legal proceedings. Any lawsuits by or against seller threatening or affecting the property. So what was the lawsuit? The lawsuit? It wasn't disclosed. The lawsuit that wasn't disclosed was the motion to lift stay. Once that stay is ---- How is that a lawsuit? I'm sorry? How is that a lawsuit? How is that a lawsuit?  It's a legal action within the bankruptcy itself, which my client was not a party to, so he would have no way of knowing. And I think ---- So you're defining lawsuit as any ---- I'm sorry? You're defining a lawsuit as any legal proceeding? Is that what you're ---- Yes. The legal proceeding, which this circuit has broadly defined. Proceeding has been defined in various ways. And I'm citing from our reply brief, it's very broad, ranging from the broad to the broad. And I think both lay and legal dictionaries suggest that definitions of the term fall into one of two categories. Proceeding ---- But the operative language you just read us is you have to disclose any lawsuit. So a motion doesn't begin a lawsuit. Was there an underlying lawsuit already? Well, the underlying legal proceeding, and it does state legal proceedings. Well, the heading does, but the sentence, you know, you read us the grammatical sentence normally. Your obligations are created by sentences, not by headlines. Fair enough. But that can be taken into consideration. I would also note that in that ---- within that provision, the language is affecting the property, including, which means there could be other things. And I would also note that this agreement was drafted by the appellee and provided to the appellant for his signature. No, but it wasn't a contract of adhesion. There was a lot of negotiations by these pretty sophisticated parties, weren't they? That's correct. And a sophisticated party, I would submit to this Court that you don't even have to be a sophisticated party to know that if you can purchase something, be it land or a new suit, at a reduced price, I would be hard-pressed to find somebody that wouldn't do that. Had my client known, they certainly would have ---- it certainly would have purchased that property at the fire sale. And I think it's notable that nowhere in the record ---- Has the county actually initiated a tax sale proceeding? One was after the motion to lift stay had been granted. Well, let me ask you this. Before the bankruptcy petition was filed, had there been any attempt to foreclose on the property by the county? I do not know, Your Honor. Your statement was when the motion for relief was granted then, or was going to be if it was granted, then there would be a lawsuit, i.e., a foreclosure. A foreclosure, but ---- Isn't that essentially right? I think it's notable also that the trial court, and for whatever this is worth, acknowledged pretty much it was his finding that it was illegal proceeding the motion to lift stay. And the bottom line is my client was kept in the dark. They had clearly five days to provide written notice to my client, and that wasn't done. So you just sort of said that when you called that it was going to be sold at a fire sale, of course, maybe that's what turned out. We didn't know at the beginning that was going to be the case. But your basic gripe is that he agreed to pay $825,000 and didn't know that he might have been able to buy it at foreclosure, even though the fact that there were unpaid taxes was in the brochure, wasn't it? Absolutely. That is the issue in a nutshell. That's it. But he was deprived of that opportunity. He would have sat back, as any sophisticated buyer would have done, and waited to see what happened. And I think it's also notable that the and it's. But, of course, if he had done that, somebody else could have bought it in at a fire sale plus a dollar. Not necessarily. Well, true, but not necessarily. I mean, that's what you do when you make a contract, is that you solidify your right to buy it now against the possibility of what might happen down the road, right? I agree. But I also would note for the Court that the property, when it was sold at the tax sale, or offered at the tax sale, as argued in the trial brief, it wasn't even, there wasn't even an offer for the amount of the taxes that were due. Don't forget, this is a. That failure of the sale occurred how long after the agreement? A year or so? Approximately, yes. Okay. Yes. But, and I would surmise that given the life safety issues with the property, that that was, that could have been, and it's speculation, arguably. But. Do you want to address the waiver issue? You know that's what they're going to come up and say. I do. I do. Go for it. You can't. Well, a waiver, it's Hornbook law, that a waiver has to be voluntary and you have to have knowledge. And as I said before, our client was kept in the dark. There was no disclosure. There's nowhere in the record. Is there any disclosure? As a matter of fact, to the contrary. And so that's why the Court's finding of fact is clearly erroneous in paragraph 22. But you can't waive something that you don't know about. How is that possible? It's not. And so it's pretty simplistic. You have to know, sure, there were contingencies, but how can I waive something that I don't know about? The language in the contract doesn't state I'm just going to waive anything that I don't even know about. It addresses the contingencies. And one of those was to get a soil report. There were certain contingencies provided for in that, in the agreement. But then he says in those e-mails of, what, July 17 and 23, that there are no more contingencies. Well, I'm glad you brought that up also, because at that point, the buyer still didn't know that it was subject to a motion to lift stay. At that point, there was absolutely no knowledge. By the Appalachee's own admission, that wasn't the earliest that that could have been disclosed. If it was, it was August the 18th. That's the e-mail where he says, as you recall, we don't know what that was about. But that's where it says then, you know, that there is a motion to lift stay. Is that why you say that's the latest date at which he would have known? That, coupled with the fact that's in the trial brief, too, which is part of the record, the Appalachee's trial brief. I believe it's in the trial brief. But I'm glad you brought that up, too. That e-mail clearly is hearsay. There's no responsive e-mail. And go ahead. No, I agree with that. I'm just saying that that's why. But that's why we say August 18th is the date by which he definitively knew, because it is in the August 18th e-mail. It is. And it's self-serving, if you recall. And there's no response. No, no. I'm not looking at that. I'm just dating the August 18th, which is a couple of weeks after these contingency waiver of all the contingency e-mails or the disputed ones. Right. About three weeks. And I don't want to be at a dead horse, but, I mean, initially there was a material breach of this. And he also, he certainly never says, oh, my God, I never heard of this, you know, because they're sending e-mails back and forth every day. And, you know, there's nothing of that sort. Right. And Mr. Till wasn't a witness at the time of trial. So, you know, we don't know. That's just, as I said, it's hearsay in the record. So, but I'm glad that you brought that up also because the trial court did not allow the appellant to develop the record in that regard. Any time that I attempted to ask the Mr. Cernich regarding whether he, whether there had been some sort of disclosure, it was met with objection after objection, sustained, sustained, sustained. I'm sorry. You said whether there were subsequent disclosures. Did you mean prior or did you really mean subsequent? Prior, whether there had been any disclosure at all. And what he would have done had he known. And that simply was shut down at the time of trial. He wasn't permitted to testify. And, in fact, in one instance, the judge testified for him, which is notable. But I would submit to the Court that the material breach, you can't get beyond that. And any action taken subsequent to that, which would have been, let me see, the agreement was signed June 23rd. So within five days, that disclosure needed to be made in writing by the trustee to Oxbow by June 28th. If that wasn't done, it's nowhere in the record. So with that being said, the, any action taken by Oxbow subsequent to that, and there was, with the life safety issues, at one point, Oxbow tried to cancel the contract. And they said, this is even after they had breached it. No, no. So in order to mitigate its damages, it saved the property. Because, you know, to mitigate the damages, he put, Oxbow put up an additional $25,000 to sort this out. It went up by a lawsuit, which is ultimately what happened. But at that point, it was merely trying to mitigate its damages. Did you want to save some time for rebuttal? I do.  Yeah, I do. Perfect. I thought I reserved five minutes. I could be wrong. Well, it comes off your time. So you would need to stop at five. But he's, you're good. You're okay. Okay. Thank you. A little left. Good morning, Your Honors. May it please the Court. Jonathan DeBerry on behalf of William Leonard, the Chapter 7 trustee. Keep your voice up, please. Yes, Your Honors. First, I think one of the very first questions in areas of examination that Your Honors raised is crucial. Was this a legal proceeding which had to be disclosed? And the text of the contract, and by the way, this is not something the trustee drafted. It's a CAR form, California Association of Realtors, and it says that right on it. And it was actually, although partly drafted by agents of the seller, given to the buyer to complete. And again, it's a CAR form, not something that was manufactured by the trustee. But in any event, it specifically defines that what has to be disclosed is a lawsuit, not simply any legal proceeding. It is a broad heading, but a narrow disclosure obligation. And Judge Jones did not find that the relief from stay motion was a proceeding. His precise language. Well, it's some sort of legal. It was a legal proceeding. It is a legal proceeding. It is not a lawsuit. And he did not say it was a legal proceeding. He said it was a motion in a legal proceeding. It was a motion. And the legal proceeding there would have been the bankruptcy. It was in the bankruptcy. And the bankruptcy was obviously disclosed because they were dealing with a Chapter 7 trustee, while represented by bankruptcy counsel, meaning the buyer had bankruptcy counsel, Mr. Till, whose practice included bankruptcy matters. He's well sophisticated in what is going on. The statement, you cannot treat legal proceeding and lawsuit as synonymous. Those are different concepts. One is more narrow. The lawsuit is more narrow. If they were synonymous, it would have just said disclose all legal proceedings. That's not what it said. Had the county taken any action to collect on the unpaid taxes before the bankruptcy? There was no relief from stay. There had been inquiry. No, before the bankruptcy petition was filed. Had there been any – were there back taxes at the time the bankruptcy? There were back taxes. At the time the petition was filed. My recollection is there were back taxes. However, nothing had been done to foreclose upon the properties. There had not been a tax sale noticed. Notice of default and all that. A notice of default and all that. All had to start once relief from stay was granted, which it ultimately was, in negotiations that the buyer was involved in to give the additional $25,000. The buyer had no assurance that at a tax sale it would not have to pay the same $825,000. At the time of the contract, Mr. Cernich said, and this is his testimony and it's cited in our brief, essentially I want to freeze out the other bidders. I came in with a price knowing there were other bidders and there was a court, and so I set $825,000 at what I thought would get me the property. That was his mindset at the time he was negotiating the purchase price. Why would it have been any different if he had said instead of the trustee conducting the auction, it's going to be the county of San Bernardino? Still would have been an auction. Still would have been open to competing bidders. Why would his mindset have been anything other than that same $825,000? And the taxes don't affect the price because the taxes would be a credit against the price? The taxes were paid out, were designed to be paid out of the purchase price. And that is why one of the reasons Judge Jones found that this was not even material and not every breach, and I'll get into this, but not every breach allows termination of the contract. It has got to be a material breach. And Judge Jones found that this was not a material breach if, in fact, it was a breach, the failure to disclose the relief from State proceedings. That was not material. It might have given them a right to damages as a non-material trivial breach, but they never asserted a right to damages. And, in fact, they never asserted until the day of trial that this had been a material breach. They, notice of termination was based on life safety. When they found out, as Your Honor pointed out, August 18, that there was a relief from State motion, and that references an earlier conversation. So it actually happened earlier. But they never said, wait a minute. We were never told about this. This is a material breach. We are now giving you notice of termination. We reserve our rights, but this is a material breach. They never said it was a material breach. And Judge Jones found it was not material for the very reason that the taxes were going to be paid out of the purchase price. By going through a bankruptcy auction as opposed to a tax auction, the buyer actually got a benefit because it had the right to have its due diligence expenses reimbursed, which it would not have had had it gone through a tax auction, where it would have had to conduct either buy the property completely unexamined, in which case it would have bought this property with life-threatening conditions on it for some unknown price, and found out, gee, I bought something that was worthless, whereas going through the bankruptcy process. What you called the due diligence fees, is that also referred to as the breakup fee? That's the breakup fee. The breakup fee. It's like 5 percent, $40,000 or so. Correct. And that is common practice in bankruptcy. You get what's called the stalking horse. Someone who has agreed to bid. I just want to make sure of the term. But so that the stalking horse is not out of pocket, if it turns out to not be the successful bidder, it's entitled to the breakup fee. Now, they do have to do their due diligence before the motion, but that again is common in bankruptcy for the reason that Judge Jones said in the record. The trustee wants to go to auction with a binding contract. Otherwise, competing bidders are going to say, well, I also want a 90-day due diligence period. Make it 180 days. In bankruptcy practice, you go to sale with a binding, non-contingent offer. And Mr. Cernich agreed it was binding and said, I am your non-contingent buyer. Now, paragraph 19E of this contract says that when a contingency is waived, it is conclusive that the buyer has conducted his due diligence. So once he waived, the buyer waived the further contingencies, it was conclusive. And if something wasn't disclosed, first of all, it was not a material breach. When it was disclosed, he never asserted that was grounds for termination and instead continued on with saying, I want to proceed with the contract. I want to be treated under the contract. I still want to be the buyer under the bankruptcy procedure that allows me to be the stalking horse. Never said, oh, I'm terminating. And in any event, under 19E, he waived. The headings in paragraph 19 start out, and if you look at paragraph 19A2, you'll see there's a requirement to disclose agricultural matters. It just says agricultural. But the requirement, if you read the text of the remainder of the sentence, is not anything relating to agriculture. Rather, it's any agricultural matter under a specific California statute. And the reason I point that out is it's parallel in form with the earlier paragraph dealing with legal proceedings. Starts out with a broad heading, agriculture, narrows it dramatically in the text of what actually has to be disclosed. Matters arising under a specific California agricultural statute, not all matters of agriculture. Here, we start with a broad definition or term legal proceedings and a narrowing provision that all you have to do is disclose lawsuits and abatement and nuisance issues. And I take it you have the same argument, for example, number 12, earthquake damage. It says major damage. It doesn't say any damage. Correct. I don't believe there's any earthquake damage here. No, but it's an example for the proceeding. Right. Yes, Your Honor. On the topic of earthquake damage, major damage must be reported. Right. It's not any damage. Yes. So there are the way the contract is written. Counsel, let me just, maybe it's an oddity, but as I understand it, this contract was signed on June 23, almost immediately, maybe the same day, trustee files a motion in bankruptcy court saying that this is happening, right? Yes. And that's where they keep them in the dark because it mentions that there is already a motion to lift the stay. Was that motion, is it sort of common practice that the people who just signed a contract with the bankruptcy trustee don't keep an eye on what's happening in the bankruptcy case or that the bankruptcy trustee doesn't send them motions that he's just made about their contract? Well, I can't speak. Or is it just they ran on two parallel tracks? It just seemed odd. I can't speak for Mr. Till's practice. Certainly one can look up PACER. Yes. And I certainly have a PACER account. $0.30, $0.25 a page. You just look it up and there's now services you get almost free. They were aware of the pending motion date. And, in fact, an earlier e-mail to Mr. Till, which is in the record, said, I need to have this solved now. I have a pending motion date and I have to timely file the motion. And that's when they came back and said, we're prepared to go forward. So they knew that there was a motion date reserved. How long had that motion been filed as of June 23? Do you know the San Bernardino motion? I believe it was. I do not know. I don't know. We can look it up. Thank you. But the reason for the short time between when the contract signed and when the motion was heard was because we reserved the date first and then spent the time getting all the negotiations done and came down to a short period of time saying, I really need it now and I need to know it's non-contingent so I can go in with a non-contingent sale. That's why the time between the execution and the motion is compressed, but there were long negotiations prior to that and documents exchanged. They haven't discussed novation very much, but that was one of their issues. Judge Jones specifically found that there was no novation. That's a factual determination by him which would be under the clearly erroneous standard, and if you look at the e-mails after the termination where I write Mr. Cernich and Mr. Till repeatedly, we are standing on the contract, we're giving you some additional time, but we are reserving all of our rights with respect to the breach of contract. We are simply extending the time for performance. At no point did they say, oh, no, there's been a novation. We suddenly have more time to do our due diligence. The contingency period has been revived. They never said that. Judge Jones specifically found as a matter of fact, reviewed under clearly erroneous, that there was no novation. The only modification of the contract was how long they had to perform, not how long they had to do their due diligence or anything else. Unless the panel has some questions, I've used up my argument. Okay. Thank you. I believe there was a little over a minute. She has a minute and a half. If I may answer the Court's question, I believe that you had a question regarding when the motion to lift stay had been passed in November of 2014. Thank you. I believe that was your question. Yes. Thank you. Okay. You're welcome. I just want to, I'll be brief. And again, in our reply brief, a legal proceeding has been interpreted by this circuit very broadly, and that's page 10 of our reply brief to mean any legal action or process, any act done by authority of a court of law, step taken by either party in a legal case. And it goes on. And it's very broad. And I think the distinction, the Eppley stated that there was some discussion regarding provision 13 and B and C within that provision. And again, 13A is pretty broad. And I would again point out that it says including any lawsuit. So clearly that's not an exhaustive list within that provision. I'd also point out paragraph 14, provision number 14, subsequent disclosures, which bolsters the appellant's argument. In the event the seller, prior to the close of escrow, becomes aware of any adverse conditions. Well, certainly an adverse condition would be, hey, you're going to lose this piece of property at a tax sale. They're going to foreclose it once the stay is lifted. Materially affecting the property or any material inaccuracy in disclosures, they are to otherwise promptly provide an amended disclosure in writing to the appellant. That was never done, ever. Roberts. Your time is up. Okay. Thank you. Thank you. We appreciate your arguments this morning, counsel. Thank you. This order is submitted. Thank you. It's been a pleasure. Thank you. Okay.
judges: Boggs, Paez, Owens